Today is 2019-1010 Northern California Power v. United States Today is 2019-1010 Northern California Power v. United States  Mr. Schwartz, please proceed. Good morning, and may it please the Court. Jeffrey Schwartz for the Northern California Power Agency. I'll start with something on which both sides in this case agree. Both sides agree that if Congress appropriates exactly $50 million each year from the Restoration Fund, then the CVPIA protects power contractors from having to pay disproportionate payments of restoration charges. In that case, both sides agree proportionality is binding, and that means if water and proportional power payments together add to less than the targeted amount, the remainder goes uncollected. That's at pages 22 to 23 of the government's brief, and it's in the record at document 103, ECF pages 18 to 19, and document 99, ECF page 52. We're here today because the government and the trial court wrongly interpret the act to require the opposite result if Congress appropriates $1 less than $50 million each year for expenditure from the fund. In that case, they demote proportionality and prioritize revenue collection. I'll explain why that's wrong. Before you get into the meat of your argument, can you clarify for me something? I went back and looked at the various appropriations acts for the last few years, and the number bounces around between $50 million, $55 million on the high side, to $49 million, I guess, at one point. $41 million at another point. Am I incorrect in thinking that those implicate either section sentence 1 or sentence 2 of 3407C2? My understanding is that every year, reclamation requests a certain appropriations amount, and Congress has adopted it every year except for 2013. Sometimes it's more than $50 million, sometimes it's less. Correct. My question is, are we governed in each year by either the first sentence that you've just identified, the two sentences, the first sentence or the second sentence, or is there a single rule that applies to all of these appropriations acts going back to, I went back to 2014 just to pick up the statute of limitations. I think in theory you could be under either the first sentence or the second sentence. I think that, in fact, the number has not averaged exactly $50 million in 1992 dollars. Remember, all of the dollar figures expressed in the statute are expressed in 1992 dollars, and that gets indexed up. Do all of the references to 1992 dollars get indexed up? Almost all of them. Well, how about the $6 per acre foot? They do as well. Is that being charged at 2019 dollars or is it being charged at $6? It gets indexed up. There are certain charges under the act that are not indexed. What the government refers to as the non-discretionary revenues, those are imposed under other sections of the CVPA, 3404, 3405, 3406. Just to follow up on Judge Bryson's point, when the government alleged in its brief, because this was something that I was wondering about myself, that one of the ways in which they tried to honor the greatest degree practicable portion was by always charging the $6 and the $12 for water. That isn't exactly right in that they weren't charging $6 and $12. They were charging whatever the inflationary rate for a given year was. Correct. Not necessarily $6, maybe it was $6.50 or $6.75. They were just using a shorthand in that case. That's my understanding. For convenience, all the parties are using the 1992 dollars. All right. Thank you. The government believes that, on one hand, if Congress appropriates $50 million, then proportionality binds. On the other hand, they say if Congress appropriates just $1 less, then revenue collection takes priority. What is proportionality in this case? What does it refer to, proportional? Is there some percentage established somewhere between water and power? Yes, it refers to the share of the underlying project costs that each party is responsible for. Can you tell me roughly how that shakes out? Yes. Currently, it's about 25% to power and 75% to water. Okay. The underlying project costs are 25% power, but what percentage are the power users in the years in which you're appealing actually paying? Over the 10 years preceding trial, reclamation charged almost twice the proportional amount. You're taking these from Appendix 243. Is that where the numbers show up? They appear there, and they also appear in Exhibit 4 to the amended complaint, which I don't think is in the appendix. When you say twice as much, you mean 50-50 between water and power? Almost. It was almost 50-50. In dollar terms, that amounts to a legal exaction of more than $120 million. Now, the government's effort to defend that— It's so bizarre. I mean, maybe this is to some extent Congress's fault, but the result of this is when one of the two resources has become scarce, water, the water people pay a disproportionately low amount for water. In economic terms, this seems absurd and inefficient, right? I mean, when there's a scarcity of a resource, you would think it would drive costs up, but Congress has capped the cost for the water users, and they're making the power people, for whom there is no scarcity of resource, pay much, much, much for power than they would have otherwise. Does that sound about right from an economic standpoint? It's a bizarre— You're right that this doesn't track— It makes no economic sense. It isn't rational in the economic sense of the word. Correct. There's one caveat, one clarification I would add, though. When there's no water, there's no water. But when there's no water, there's also no hydropower. So the government's interpretation, well, the way we interpret the statute, all of the limitations in subsection D work together. In a high-water year, without limitation, I mean, without proportionality, proportionality was not in the statute. In a high-water year, then the government could charge all of the $30 million to power users or to water users, but proportionality says no. Proportionality tells you how much of the $30 million goes to each group. We think that the statute works— Has there ever been a high-water year? There are occasionally high-water years. And when there's a high-water year, does the government do it, just out of curiosity, on some sort of rolling basis? And what I mean by that is why don't they look at the 10 previous years and the way in which the power people disproportionately paid and then tax the water people to make up for that? Well, I agree with you. They interpret the statute consistently to favor water users. I have a few questions. One is, during all these drought years, the government has been trying to collect $30 million of M&R payments, right? Yes. Collectively from the power and the water. And let's say, for purposes of my question, every year is authorized an appropriations of $50 million, approximately $50 million. Are there ever any years where the government is, or Reclamation is, unable to hit that $50 million mark because from whatever other sources of payments they're supposed to collect from, they never add up to $20 million? Do you understand my question? Sorry, I heard two different things in that question. I'm not sure that I quite understood it. Let me try. I believe in most years, perhaps all, other revenues have not equaled $20 million. So on their interpretation, they're constantly trying to get to the $30 million. So for several years, although there's this command, at least from their point of view, to collect $50 or approximately $50 million, there are several years where they don't do that, even when they try to max out 3407D payments through extracting $30 million from. That's correct. I think that's the typical situation. Okay. The other thing I heard in your question, I just want to make sure the record is clear, I heard you say that if Congress appropriates $50 million. Well, no, if Congress appropriates $50 million, then under the government's view, proportionality would be binding, and they would potentially collect less than $30 million. Because the way they think it works under the appropriations approach and the way we think it works under both approaches is as follows. In a dry year, the acre foot caps and the ability to pay relief are what limit waters charges, and Congress limited powers charges by requiring them to be proportional to water. Power charges are tethered to what water pays. Correct. That's correct. And this actually is not a problem under the statute. First of the $30 million, I mean, if Congress wanted to drive collections to $50 million every year, they could have. They didn't need to include the cap on combined water and power charges. The $30 million is phrased as a cap. It's not a floor. It's not a set amount that has to be recovered every year. Reclamation has other appropriations that it can and does draw upon in dry years or otherwise to achieve CVPIA purposes. You can see that in Section 3410, and there is a stipulation in the record. It's not in the appendix. I believe it's Stipulation 26 in Document 78. Reclamation has actually used more than $700 million of other funding for CVPIA purposes. Do you know why Congress added in 3407D the provision to cap the amount that can be collected from water? Are you referring to the acre foot caps? Yes. I believe that they were worried about affordability to water, Why affordability for water and not for power? They were worried about power. I guess if I had to choose one or the other, I'd choose water. I want my toilet to flush. It doesn't make sense to me. I guess that's what I'm saying. It's affordability for water, and by virtue of proportionality, affordability for power. If there's a shortfall, there are other appropriations available for CVPIA purposes. What explanation, if any, do you think there is for the difference in language that Congress used with respect to the sentence 1 and sentence 2 where they said subject to, and then in the second iteration, subject to the limitations of? The government attaches significance to that. What do you have by way of an explanation for it? There is a difference. Under the first sentence, they have to try to collect $50 million every year subject to subsection D. Under the second sentence, there's a three-year rolling average on the $50 million collection. I understand that difference, but why does that express itself in the form of subject to, on the one hand, and subject to the limitations of? Because you have to attribute what we normally attribute, whether justifiably or not, some kind of rationality to the way these statutes are crafted. Here, I'm not finding an explanation, so I'm looking to you for one. I agree with you. The phrase subject to subsection D and the phrase subject to the limitations of subsection D is synonymous. If I'm invited to a conference and I accept subject to my availability or subject to the limitations on my availability, that's the same thing. The extra words have not changed. You could say they're different. You could say that subject to my availability is my choice. Subject to my limitations on my ability are imposed externally. They're different words. We have to start, at least, by trying to find an explanation. True, but not at the expense of distorting the plain meaning. C2 uses the word limitations. Proportionality is a limitation. They treat it as a limitation under the appropriations approach. They actually treat it as a limitation under the other approach as well. Let me ask you another question about that, which is, what do you think to the greatest degree practicable means? If it's your view that there is an allocation for proportionality of 75-25, then why wouldn't it just always be proportional 75-25? When is the greatest degree practicable? When do you see deviation from the 25-75, and when will that meet the practicable? There are three answers to that question. The first one is that Congress, when it wrote the statute, expected these charges to be calculated prospectively before the beginning of each fiscal year based on estimates of water deliveries. You can see that in 3407 D1. Estimates are never going to turn out to be exactly spot on. That's one source of potential impracticability. The government may say, Ah, but when we actually apply it, we do true-ups at the end of the year. And if you apply true-ups and our view of what proportionality means and that it's binding, yes, you can get to proportionality. That's not a problem for Congress. Congress said maximize proportionality. Do it to the greatest degree achievable, to the maximum extent practicable. If it is practicable, that's a good thing. That's what Congress would want. Practicable and achievable are not by any means the same. Achievable to the greatest degree practicable. Sorry, I misspoke. So Congress wouldn't want us to manufacture reasons to make it impracticable just to give some meaning to the words to the greatest degree practicable. They wanted us to maximize proportionality. The third answer is... What do you think Congress, in your view, must have realized ahead of time when it wrote that language that, I mean, what circumstances did they envision that it would be impossible to make an accurate, precise, proportional arrangement between water and power? So, as I said, if you're doing this in advance based on estimates of how much water is going to be delivered, remember, power doesn't get... Power gets allocated a lump-sum dollar amount. And that gets told to Western. Western charges the power contractors. That gets collected regardless of how much water actually occurs during the year, regardless of how much power is produced during the year. The water contractors are different. They get charged based on water actually delivered. So when you're setting charges ahead of time, you're going to make a guess as to what you think that's going to be, but the reality is going to turn out to be different. But then you said the true-ups take care of it. That's correct. So that sort of filters that problem out, doesn't it? Yes, it's not clear that Congress had that in mind, but even under the true-ups, there is a circumstance under which proportionality, strict proportionality, would be impracticable. There is one subsection D charge that the government has no discretion to reduce. That's the $25 per acre-foot charge on certain sales and transfers. There's no ability to reduce that charge. So if there's enough of that water and enough of those charges in combination with other revenues, that could take care of, I mean, that could exceed 75% of the combined cap, which is now $30 million. Eventually later it may drop to $15 million. If there's enough of that water to go beyond 75% of the combined power and water cap, that would be a source of disproportionality that could not be avoided. Okay, well, we have used all your rebuttal time. I just have one quick question. Sure, of course. One last question. Yes, sir. The back half of your brief makes a lot of arguments about, or complaints about, under-collections from water by the government. Hypothetically, if you were to wing on your statutory construction argument, would you still have those arguments? I mean, those arguments would... There would be no need to reach them. Would tend to cut in your favor then, right? Because if they're under-collecting from water and power payments are proportional to water payments, it's actually good for you that they under-collect from water, right? Because if their payments go down, then proportionally your payments are also going to go down. You benefit from their laziness. Retrospectively, in this one instance, yes. So then you would withdraw those arguments from your... Well, you wouldn't need to reach them because the statutory construction argument asks whether the government can impose disproportionate charges in order to make up for deficient water collections. If the answer to that is no, you don't need to decide whether the government minimized those deficiencies. And going forward, the government actually would have an incentive, it has lacked so far, to enforce the statute equally and carefully against both power and water contractors. Okay. Thank you, Mr. Schwartz. We'll restore two minutes of rebuttal time for you.